EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Autoridad de Acueductos y Alcantarillados<br><br>Peticionarios<br><br>v.<br><br>Unión Independiente Auténtica de Empleados de la Autoridad de Acueductos y Alcantarillados<br><br>Recurrida | Certiorari<br><br>2018 TSPR 17<br><br>199 ____ |

Número del Caso: CC-2016-797


Fecha: 6 de febrero de 2018


Tribunal de Apelaciones:

      Región Judicial de San Juan


Abogada parte peticionaria:

      Lcda. Aslín M. Cabán Mendoza


Abogado parte recurrida:

      Lcdo. Arturo Ríos Escribano


Materia: Derecho Apelativo - Jurisdicción del Tribunal de Apelaciones para atender una orden interlocutoria emitida por la Junta de Relaciones del Trabajo.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Autoridad de Acueductos y
Alcantarillados

     Peticionaria

      v.                       **Núm.** CC-2016-0797

Unión Independiente Auténtica
de Empleados de la Autoridad
de Acueductos y Alcantarillados

     Recurrida

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

En San Juan, Puerto Rico, a 6 de febrero de 2018.

En esta ocasión nos corresponde resolver si el Tribunal de Apelaciones tiene jurisdicción para atender una orden interlocutoria emitida por la Junta de Relaciones del Trabajo.

**I**

El 15 de julio de 2015, el entonces Gobernador Interino, Dr. David E. Bernier Rivera, emitió la *Orden Ejecutiva* (OE-2015-023) *para la implementación de las recomendaciones esbozadas por el grupo interagencial de reorganización y eficiencia gubernamental, designado en abril de 2015*. Mediante ésta, entre otras cosas, se creó un esquema uniforme de regionalización de las oficinas de las agencias que ofreciesen servicios directos a la ciudadanía

uniformar sus regiones de servicio, conforme a los parámetros dispuestos en la referida *Orden*.

El 29 de octubre de 2015, el Director de Recursos Humanos y Relaciones Laborales de la Autoridad de Acueductos y Alcantarillados (AAA), Sr. Alberto Feliciano Nieves, le envió una comunicación al Sr. Pedro Irene Maymí, Presidente de la Unión Independiente Auténtica de Empleados de la AAA (UIA). En ésta, el señor Feliciano Nieves informó que la AAA estaba desarrollando un proyecto para maximizar los recursos de la agencia, el cual supondría una reconfiguración del quehacer típico de las oficinas comerciales y sus empleados.

El día siguiente, 30 de octubre de 2015, la AAA envió unas comunicaciones a ciertos empleados que laboraban en diversas Oficinas de Servicios al Cliente de la agencia. Mediante las misivas, se les informó a estos empleados que, a partir del 12 de enero de 2016, las instalaciones en que se desempeñaban serían consolidadas con otras y sus puestos serían 'reubicados'.

En respuesta, el 4 de noviembre de 2015, el señor Irene Maymí dirigió una comunicación al señor Feliciano Nieves en la que indicó que no se le había notificado oficialmente a la UIA la restructuración que se estaba llevando a cabo. Por tanto, objetó las 'reubicaciones' de empleados y solicitó que el asunto se sometiera al proceso de arbitraje dispuesto en el Artículo XXIV (4) (B) del *Convenio Colectivo* suscrito

por las partes.[1] Asimismo, solicitó que se mantuviesen en suspenso las 'reubicaciones' hasta tanto se culminara el proceso de arbitraje.

El 17 de noviembre de 2015, la UIA presentó una *Solicitud para designación o selección de árbitro* (querella) ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos de Puerto Rico. En síntesis, adujo que la AAA violó el *Convenio Colectivo* "al querer trasladar a los querellantes de forma injusta,

---

[1] El Artículo XXIV (4) (B) del *Convenio Colectivo* dispone que:

> Cuando en interés del servicio la Autoridad necesite trasladar con carácter permanente a un empleado de una municipalidad a otra, notificará el traslado al empleado con copia a la Unión y el empleado y la Unión tendrán siete (7) días laborables a partir de la fecha de la notificación para solicitar la reconsideración del traslado. Transcurrido dicho término sin que ni el empleado ni la Unión hayan hecho uso del derecho de reconsideración, el traslado será efectivo a la fecha que se le hubiere indicado por escrito al empleado. Si la Unión y/o el empleado no estuviera de acuerdo con la decisión de la Autoridad, podrán someter el caso según el procedimiento de arbitraje dentro de los siete (7) días después de tener conocimiento de la decisión de la Autoridad. Dicho traslado quedará en suspenso hasta que se emita una decisión final. Véase *Apéndice XXII*, en la pág. 157.

Señalamos, además, que el 13 de septiembre de 2014, la AAA y la UIA suscribieron la *Estipulación de la Ley Núm. 66*. Mediante este acuerdo, ambas partes enmendaron el convenio colectivo, en lo concerniente, para disponer un procedimiento de arbitraje acelerado. El inciso (h) de la sección de *Acuerdos no económicos* contenida en la *Estipulación* dispone que "[s]e acuerda establecer un procedimiento de [sic] a través del proceso de arbitraje para atender en un término no mayor de diez días los reclamos relacionados a traslados, cambios de horario y/o cambios de deberes". *Apéndice XXIII*, en la pág. 165.

arbitraria, caprichosa e improcedente, sin brindarle las garantías más elementales del debido proceso de convenio colectivo". *Apéndice VII*, en la pág. 73. El 24 de noviembre de 2015, el árbitro designado, Sr. Jorge L. Torres Plaza, emitió una citación a vista señalada para el 3 de diciembre de 2015.

En el ínterin, el 30 de noviembre de 2015, la UIA presentó ante la Junta de Relaciones del Trabajo un cargo en contra de la AAA. Mediante éste, que fue enmendado el 7 de diciembre de 2015, la UIA planteó que las 'reubicaciones' no estaban contempladas en el *Convenio Colectivo* y tampoco habían sido negociadas con la UIA. *Apéndice X*, en la pág. 83. Asimismo, arguyó que las 'reubicaciones' alteraron los capítulos de la unión, así interviniendo en la administración y funcionamiento de ésta. Por tanto, razonaron que la AAA actuó en contravención al *Convenio Colectivo* e incurrió en prácticas ilícitas del trabajo, conforme lo dispuesto en el Artículo 8 (1) (a) (b) (c) y (f) de la *Ley de Relaciones del Trabajo de Puerto Rico*, Ley Núm. 130 de 8 de mayo de 1945. 29 LPRA secs. 69 (1) (a) (b) (c) y (f).

Posteriormente, el 3 de diciembre de 2015, ambas partes comparecieron a la vista señalada en el Negociado de Conciliación y Arbitraje. Ahora bien, durante los procedimientos la UIA solicitó el archivo y cierre con perjuicio de la querella presentada. La AAA se allanó a esta solicitud. Consecuentemente, el 4 de diciembre de 2015, el

árbitro emitió una *Resolución* mediante la cual declaró *ha lugar* la referida petición. Así las cosas, continuaron los procedimientos ante la Junta de Relaciones del Trabajo.

El 23 de diciembre de 2015, la UIA presentó ante la Junta una *Urgente solicitud de intervención y auxilio de jurisdicción*. Mediante ésta, solicitó que se paralizaran los traslados de los empleados y el cierre de las instalaciones que serían consolidadas, hasta tanto se culminara el proceso adjudicativo. Asimismo, señaló que -pendiente el trámite- la AAA informó a ciertos empleados que serían 'reubicados' y que éstos podrían apelar la determinación ante la Oficina de Apelaciones de la AAA; ello contrario al proceso de arbitraje aplicable que se estipuló en el Artículo XXIV (4) (b) del *Convenio Colectivo*.[2]

Oportunamente, el 7 de enero de 2015, la AAA presentó su posición respecto a la controversia. En lo que nos concierne, planteó que la Junta no tenía jurisdicción para disponer del cargo presentado por la UIA. Razonó que, conforme al Artículo IX (A) del *Convenio Colectivo*, ambas partes tenía que agotar los remedios administrativos antes de acudir a la Junta.[3] Así, en consideración a que la UIA

---

[2] El 14 de enero de 2016, la AAA presentó una *Moción Informativa* mediante la cual informó que notificó nuevamente -el 13 de enero de 2016- las referidas comunicaciones, eliminando la referencia a la posibilidad de apelar la determinación ante la Oficina de Apelaciones de la AAA. En vez, la AAA hizo constar que la UIA presentó una querella ante el Negociado de Conciliación y Arbitraje y que ésta fue "desestimada con perjuicio" mediante la *Resolución* del 4 de diciembre de 2015. Véase *Apéndice XXI*, en las págs. 143-151.
[3] En la Sección (A) (1) del Artículo IX (A) del *Convenio colectivo* dispone que una querella "significa toda

presentó una querella ante el Negociado de Conciliación y Arbitraje, y ya que decidió desistir con perjuicio de la misma, correspondía el cierre y archivo del referido cargo.

El 8 de enero de 2016, la Junta emitió una *Resolución*. En lo pertinente, ordenó la paralización de cualquier trámite de personal hasta que se esclareciera cuál era el foro convenido a utilizarse para dirimir la controversia y determinó que se continuaría el trámite de investigación correspondiente. Inconforme, el 12 de enero de 2016, la AAA presentó una moción de reconsideración en la que reiteró sus argumentos respecto a la falta de jurisdicción de la Junta para disponer del cargo y que la controversia sobre la 'reubicación' del personal fue debidamente adjudicada por el Negociado de Conciliación y Arbitraje, por lo que constituía cosa juzgada. Asimismo, reiteró que las 'reubicaciones' eran una prerrogativa gerencial realizada en cumplimiento con la Orden Ejecutiva (OE-2015-023) y reconocida por el *Convenio Colectivo*. Por último, resaltó que la orden de paralización era un "ejercicio de futilidad", puesto que ya se habían cerrado las instalaciones en las que trabajaban los empleados querellantes.

_____

controversia o disputa entre la Unión y la AAA, en torno a reclamaciones de los trabajadores cubiertos por este convenio, que surjan en la administración, interpretación o aplicación del mismo". *Apéndice XXV*, en la pág. 187. Asimismo, establece que éstas serán presentadas y resueltas a tenor con el procedimiento administrativo ahí dispuesto. Cabe señalar que, el inciso (C) de este Artículo establece que la AAA o la UIA "podrán solicitar la intervención de un árbitro del Negociado de Conciliación y Arbitraje para resolver la querella". *Id.* en la pág. 189.

El 29 de enero de 2016, mediante *Resolución*, la Junta denegó la moción de reconsideración presentada por la AAA. En lo pertinente, entendió que poseía jurisdicción para atender el cargo y consideró que, en la etapa en que se encontraban los procedimientos, la desestimación sería prematura. Es por ello que refirió el expediente a la División Legal del Departamento del Trabajo para que, en un término de quince (15) días, acudiera al Tribunal de Primera Instancia con tal de hacer cumplir la *Resolución* emitida por la Junta el 8 de enero de 2016.

Consecuentemente, el 17 de febrero de 2016, la AAA acudió al Tribunal de Apelaciones mediante un recurso de revisión judicial en el que reiteró los planteamientos esgrimidos sobre la falta de jurisdicción de la Junta para atender la controversia. El 6 de junio de 2016, el foro apelativo intermedio notificó una *Resolución* mediante la cual desestimó el recurso presentado. Éste concluyó que la *Resolución* recurrida era de carácter interlocutoria, por lo que no podían examinar la controversia.

Para así concluir, el foro apelativo intermedio razonó que la orden de paralización de los trámites de personal decretada por la Junta, el 8 de enero de 2016, era "un mecanismo procesal provisional que no adjudica derecho alguno y, más bien, es una medida previa a la adjudicación de éstos. Más aún, si todavía no existe un foro que pueda entender y resolver las controversias entre las partes, ¿Qué es lo que este tribunal debe revisar?" *Apéndice I*, en las

págs. 14-15. Añadió que los derechos de las partes continuaban en incertidumbre, por lo que se tenía que agotar el trámite administrativo. Señaló, además, que la *Resolución* del árbitro sólo incluía un resumen del tracto procesal del caso, por lo que estaba desprovista de determinaciones de hechos y conclusiones de derecho según lo requiere la *Ley de procedimiento administrativo uniforme*. Por último, planteó que, culminado el proceso, las partes adversamente afectadas podrán recurrir en alzada a presentar aquellos planteamientos que estimen pertinentes.

Inconforme, la AAA presentó una moción de reconsideración el 21 de junio de 2016. No obstante, el Tribunal de Apelaciones la denegó mediante una *Resolución* notificada el 15 de julio de 2016. Así, pues, la AAA presentó un recurso de *certiorari* ante este Tribunal. En éste, sólo planteó un señalamiento de error, a saber:

> Erró el Tribunal de Apelaciones al desestimar el Recurso de "Revisión de decisión administrativa" presentado por la Autoridad y concluir que no posee jurisdicción para atender una controversia de falta de jurisdicción de la Junta de Relaciones del Trabajo.

Tras ciertos trámites procesales, el 16 de diciembre de 2016, emitimos una *Resolución* mediante la cual expedimos el auto solicitado. Concedido un término a las partes para que se expresaran en torno a la controversia, éstos comparecieron oportunamente mediante alegatos. Con el beneficio de estas comparecencias, procedemos a resolver.

**II**

**A**

La Asamblea Legislativa dispuso en la *Ley de Relaciones del Trabajo* (*Ley Núm. 130*) que la negociación colectiva constituiría un elemento esencial para salvaguardar la paz industrial, garantizar salarios adecuados y promover condiciones seguras para los trabajadores puertorriqueños. Para alcanzar estas metas, se dispuso en el Artículo 4 que a éstos se les garantizará el derecho a "organizarse entre sí; a constituir, afiliarse o ayudar a organizaciones obreras; negociar colectivamente a través de representantes por ellos seleccionados; y dedicarse a actividades concertadas con el propósito de negociar colectivamente u otro fin de ayuda o protección mutua". 29 LPRA sec. 65.

Cabe destacar que, en reconocimiento de la importancia de la política pública, derechos y principios consagrados en la *Ley Núm. 130*, la Convención Constituyente decidió conferirle carácter constitucional al derecho a mejorar las condiciones de empleo mediante la negociación colectiva. Véase *C.O.P.R. v. S.P.U.*, 181 DPR 299, 315-318 (2011); *U.P.R. v. Asoc. Pur. Profs. Universitarios*, 136 DPR 335, 362 (1994). Así, aunque en ocasiones aparenta ignorarse, la Sección 17 de la Carta de Derechos de la Constitución del Estado Libre Asociado establece que:

> Los trabajadores de empresas, negocios y patronos privados y de agencias o instrumentalidades del gobierno que funcionen como empresas o negocios privados tendrán el derecho a organizarse y a negociar colectivamente con sus patronos por mediación

de representantes de su propia selección para promover su bienestar. Const. P.R. Art. II, Sec. 17.

Idealmente, el proceso de negociación colectiva resulta en la confluencia de voluntades de las uniones, los empleados individuales y los patronos. Véase Paul Weiler, *Striking New Balance: Freedom of Contract and the Prospects for Union representation*, 98 HARV. L. REV. 351 (1984). Así, en ocasiones, se logra elaborar un convenio colectivo que constituye un "acuerdo por escrito efectuado entre una organización obrera y un patrono, en el cual se especifican los términos y condiciones de empleo para los trabajadores cubiertos por el contrato, el estatus de la organización obrera y el procedimiento para resolver disputas que se susciten durante la vigencia del mismo". *Cardona Caraballo v. A.C.T.*, 2016 TSPR 242, en la pág. 4, 196 DPR ___ (2016). Sin duda, según hemos reconocido, "[l]a otorgación y firma de un convenio colectivo representa el triunfo del poder de la negociación sobre la fuerza, de la cordura y la razón sobre la temeridad y la violencia, y de la necesidad que todos tenemos de vivir en armonía los unos con los otros". *U.I.L. de Ponce v. Dest. Serrallés, Inc.*, 116 DPR 348, 352 (1985). Véase, además, *Hietel v. P.R.T.C.*, 182 DPR 451, 457 (2011).

En consideración a lo anterior, los convenios colectivos no deben ser catalogados como meros contratos que consagran derechos individuales, "sino que se deben considerar instrumentos que crean relaciones e intereses a

la luz de la política pública laboral estatal". *C.O.P.R.*, 181 DPR en la pág. 320. En fin, éstos se encuentran revestidos de alto interés público e, incluso, promueven la política laboral del Gobierno. Véase *J.R.T. v. Junta Adm. Muelles*, 122 DPR en la pág. 330; *P.R. Telephone v. Junta Relaciones Trabajo*, 86 DPR 382 (1962).

**B**

Cónsono con los principios de política pública antes esbozados, hemos reconocido que en nuestra jurisdicción se favorece la utilización del arbitraje para resolver disputas de carácter obrero-patronal. Véase *C.F.S.E. v. Unión de Médicos*, 170 DPR 443, 449 (2009); *U.G.T. v. Corp. Difusión Pub.*, 168 DPR 674, 682 (2006). Ello, pues el arbitraje constituye un trámite rápido, cómodo, menos costoso y técnico para resolver controversias. Véase *Pagán Rodríguez v. Hosp. Dr. Pila*, 114 DPR 224, 231 (1983). Así, este proceso resulta en el método idóneo para resolver aquellas disputas que surgen de la aplicación e interpretación de los convenios colectivos y, por consiguiente, es un vehículo adecuado para promulgar la paz industrial. Véase *Martínez Rodríguez v. A.E.E.*, 133 DPR 986, 995 (1993); *F.S.E. v. J.R.T.*, 111 DPR 505, 516 (1981); *Pérez v. Autoridad de Fuentes Fluviales*, 87 DPR 118, 127 (1963).

Es importante puntualizar que "un acuerdo en un convenio colectivo para utilizar el arbitraje como mecanismo de ajuste de controversias crea un foro sustituto a los tribunales de justicia". *Condado Plaza v. Asoc. Emp. Casinos*

*P.R.*, 149 DPR 347, 352 (1999); *Hietel v. P.R.T.C.*, 182 DPR 451, 456 (2011). De esta forma, los laudos de arbitraje "ocupa[n] una posición muy similar a la de una sentencia o decreto judicial". *Ríos v. Puerto Rico Cement Corp.*, 66 DPR 470, 477 (1946). Ciertamente, la interpretación de los laudos producto de este proceso merecerán gran deferencia. Véase *Aut. Puertos v. H.E.O.*, 186 DPR 417, 424 (2012); *Depto. Educ. v. Díaz Maldonado*, 183 DPR 315, 325 (2011).

## C

De otra parte, se debe tener presente que al igual que los contratos ordinarios, las disposiciones sobre la interpretación contractual contenidas en el *Código civil de Puerto Rico* aplican a los convenios colectivos. Véase *Hietel*, 182 DPR en la pág. 458; *C.F.S.E. v. Unión de Médicos*, 170 DPR en la pág. 450. Sin duda, estos acuerdos constituyen la ley entre las partes suscribientes; siempre que no contravengan las leyes, la moral y el orden público. Véase *Vélez v. Serv. Legales de P.R., Inc.*, 144 DPR 673, 682 (1998); *J.R.T. v. Junta Adm. Muelles*, 122 DPR en la pág. 333. De esta forma se "fomenta un mayor sentido de responsabilidad en las partes contratantes, lo que a su vez propicia la paz industrial". *Pérez v. Autoridad*, 87 DPR en la pág. 124.

Por ende, tanto el patrono como la unión y los empleados individuales están obligados a cumplir rigurosamente con lo que ahí estipularon. Véase *Cardona Caraballo*, 2016 TSPR en

la pág. 4; *Hermandad Unión de Empleados v. F.S.E.*, 112 DPR 51, 53 (1982).

Sin duda, el arbitraje es un asunto inherentemente contractual, por lo que los principios de interpretación antes esbozados aplican en aquellas instancias en las que en un convenio colectivo se dispone como método alterno de solución de disputas. A esos efectos, hemos reconocido que "cuando ambas partes, al firmar el convenio colectivo, se comprometen a someter al procedimiento de arbitraje cualquier queja y agravio que surja entre ellas, tal cláusula las obliga por igual". *C.O.P.R v. S.P.U.*, 181 DPR en la pág. 321; *Pérez v. Autoridad*, 87 DPR en la pág. 124; *Rivera Adorno v. Autoridad de Tierras*, 83 DPR 258 (1961). Ello, pues, "ni el patrono ni los obreros pueden pretender beneficiarse de ciertas cláusulas del convenio colectivo y rechazar otras. El convenio es un contrato y vincula a ambas partes por igual". *San Juan Mercantile Corp. v. J.R.T.*, 104 DPR 86, 89 (1975).

## III

### A

Por otro lado, mediante la *Ley Núm. 130* se creó la Junta de Relaciones del Trabajo. Este organismo, cuasi-judicial, tiene la responsabilidad de velar por el cumplimiento de los propósitos consagrados en la *Ley* y de evitar que cualquier persona incurra en prácticas ilícitas del trabajo. Véase *U.T.I.E.R. v. J.R.T.*, 99 DPR 512, 525 (1970).[4]

---

[4] En general, la *Ley Núm. 130* persigue:

Según lo dispuesto en la *Ley Núm. 130*, la Junta de Relaciones del Trabajo tiene la facultad exclusiva para prevenir y remediar las prácticas ilícitas del trabajo. Véase 29 LPRA sec. 68 (a); *Puerto Rico Telephone Co. v. Unión Independiente de Empleados Telefónicos*, 131 DPR 171, 188 (1992). Ello, "como medio efectivo para promover la política pública en el campo de las relaciones obrero-patronales, que se manifiesta predominantemente en el deseo de mantener la paz industrial asegurando así el libre curso de la producción y el comercio". *J.R.T. v. A.M.A.*, 91 DPR 500, 512-513 (1964).[5]

Con relación a lo anterior, es importante recordar que la jurisdicción es el poder o autoridad que ostenta un tribunal u organismo administrativo para considerar las controversias presentadas ante su consideración. Véase *Peerless Oil v. Hermanos Pérez*, 186 DPR 239, 249

---

desarrollar la producción del país hasta el máximo; distribuir esa producción tan equitativamente cuando sea posible; desarrollar la práctica de la negociación colectiva obrero-patronal; lograr la paz industrial, salarios adecuados y la producción ininterrumpida de artículos y servicios; la fijación de los términos y condiciones de empleo a través de la negociación colectiva; eliminar en lo posible las disputas obreras fomentando la negociación colectiva y estableciendo un tribunal adecuado (la Junta de Relaciones del Trabajo) que implemente esta política pública; se declara que los convenios colectivos están revestidos de interés público. *U.T.I.E.R. v. J.R.T.*, 99 DPR 512, 525 (1970).

[5] Véase, por ejemplo, *Plan de Salud U.I.A. v. A.A.A.*, 169 DPR 603, 609 (2006) (Sentencia) (El legislador estimó que sólo un organismo especializado y diseñado exclusivamente para ese propósito, como es la Junta, podría dar plena eficacia a los derechos de organización y negociación colectiva).

(2012); *S.L.G. Solá-Moreno v. Bengoa Becerra*, 182 DPR 675, 682 (2011); *Asoc. Punta Las Marías v. A.R.P.E.*, 170 DPR 253, 263 esc. 3 (2007). A esos efectos, "[l]os organismos administrativos, así como los foros judiciales, no tienen discreción para asumir jurisdicción donde no la hay". *D.A.C.O. v. A.F.S.C.M.E.*, 185 DPR 1, 12 (2012); *A.S.G. v. Mun. San Juan*, 168 DPR 337, 343 (2006); *Roberts v. U.S.O. Council of P.R.*, 145 DPR 58 (1998).

Por lo tanto, estas entidades sólo "pueden ejercer los poderes que su ley habilitadora expresamente les ha otorgado y aquellos que sean indispensables para llevar a cabo su encomienda primordial". *D.A.C.O.*, 185 DPR en la pág. 12. Claro está, de la agencia actuar al margen de sus facultades, "aquella actuación administrativa que no obedezca el poder que se le confirió mediante legislación, debe ser catalogada como *ultra vires*". *D.A.C.O.*, 185 DPR en la pág. 13; *Caribe Comms., Inc. v. P.R.T.C.*, 157 DPR 203 (2002).

Por último, en lo pertinente, el Artículo 8 de la *Ley Núm. 130* establece cuáles son aquellas prácticas laborales que serán consideradas ilícitas. Particularmente, el inciso (1)(f) dispone que incurrirá en una práctica ilícita un patrono, actuando individualmente o concertadamente con otros, que "[v]iole los términos de un convenio colectivo, incluyendo un acuerdo en el que se comprometa a aceptar un laudo de arbitraje, esté o no dicho acuerdo incluido en los términos de un convenio colectivo". 29 LPRA sec. 69 (1)(f). Véase, además, *J.R.T. v. A.M.A.*, 91 DPR 500, 511 (1964).

**B**

**i**

Según comentamos, la Junta de Relaciones del Trabajo tiene -por virtud de ley- la jurisdicción exclusiva para atender lo relativo a las prácticas ilícitas del trabajo. A su vez, la *Ley Núm. 130* permite que las partes pacten en un convenio colectivo los procesos que estimen pertinentes para la disposición de quejas y agravios. Mediante éstos, las partes podrían optar por resolver controversias que estarían bajo la jurisdicción exclusiva de la Junta. Esta situación, ciertamente, aparenta albergar una patente contradicción. Ahora bien, al matizar los principios aplicables a este contexto particular, podemos esclarecer esta compleja dinámica.

En primer lugar, es imprescindible destacar que el Artículo 7 (a) de la *Ley Núm. 103* dispone que la jurisdicción de la Junta de Relaciones del Trabajo no se afectará por algún otro medio de ajuste o prevención.[6] Por lo tanto, queda

---

[6] En particular, este artículo dispone que "[l]a Junta tendrá facultad, según se dispone en la sec. 70 de este título, para evitar que cualquier persona se dedique a cualesquiera de las prácticas ilícitas de trabajo que se enumeran en la sec. 69 de este título. Esta facultad será exclusiva y no la afectará ningún otro medio de ajuste o prevención". 29 LPRA sec. 68 (a).

Por otro lado, señalamos que la Sección 10 (a) del *National Labor Relations Act* (*NLRA*) -respecto al *National Labor Relations Board* (*NLRB*)- dispone, en lo pertinente, esencialmente lo mismo. En particular, ésta establece que:

> The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8 [section 158 of this title]) affecting

de manifiesto que la propia *Ley* establece -sin ambages- que la Junta retiene su jurisdicción exclusiva para atender situaciones de prácticas ilícitas del trabajo, independientemente de que exista un proceso para la disposición de quejas y agravios pactado en un convenio colectivo. Destacamos, además, que la Junta ha aplicado este razonamiento de la misma forma. Véase, por ejemplo, *Autoridad Metropolitana de Autobuses -y- Mark Concepción Jiménez*, Dec. Sec. Trabajo Núm. 2003-1362 del 18 de julio de 2003.[7]

Ahora bien, ello no supone que los procesos pactados por las partes pierdan su validez o efectividad. A esos efectos, impera un delicado balance de intereses entre los propósitos tras el andamiaje administrativo creado en virtud de la *Ley Núm. 130* y aquellas consideraciones de la política pública a favor de la negociación colectiva y los procesos

_____

commerce. *This power shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise* [. . .] 29 USC sec. 160 (a) (énfasis suplido).

[7] En ocasiones anteriores hemos expresado que "podemos recurrir a las disposiciones de dicha ley [*NLRA*], a las decisiones de la Junta Nacional de Relaciones del Trabajo y a la jurisprudencia federal interpretativa de dichas disposiciones como fuente persuasiva en la interpretación de nuestra ley". *Puerto Rico Telephone Co.*, 131 DPR en la nota 7. Consideramos que no existe razón alguna para no aplicar el mismo razonamiento con relación a las determinaciones emitidas por la Junta de Relaciones del Trabajo. Ello, pues, hemos reconocido conferirle gran deferencia a las determinaciones de la Junta ya que es el "organismo al cual nuestro ordenamiento ha encomendado la implantación de la política pública enmarcada por la Ley de Relaciones del Trabajo de Puerto Rico". *Martínez Rodríguez v. A.E.E.*, 133 DPR en la pág. 996.

de arbitraje. Como resultado, la Junta de Relaciones del Trabajo -sin renunciar a su jurisdicción- ha optado por conferir cierta deferencia a los procesos pactados por las partes y las determinaciones que resulten de éstos. Esta deferencia se manifiesta de distintas formas dependiendo de la etapa en que se encuentren los procedimientos, a saber: en la etapa pre-arbitraje o post-arbitraje.

A esos efectos, en la etapa pre-arbitraje, la deferencia que confiere la Junta de Relaciones del Trabajo se concreta mediante la doctrina de agotamiento de remedios contractuales. En esencia, esta doctrina establece que "antes de llevar un cargo ante la Junta, las partes deben agotar los remedios dispuestos en el Convenio Colectivo para resolver la controversia en cuestión. De lo contrario la Junta *rehusará asumir jurisdicción*, a menos que el agotamiento resulte ser un gesto fútil y vacío, irreal o imposible, o que la Unión falte a su deber de una justa representación". *Martínez Rodríguez v. A.E.E.*, 133 DPR 986, 994 (1993) (énfasis suplido); véase *Puerto Rico Telephone Co.*, 131 DPR en la pág. 195; *Vega Colón v. Corp. Azucarera de P.R.*, 123 D.P.R. 859, 863 (1989); *Hermandad Unión de Empleados v. F.S.E.*, 112 DPR en la pág. 55; *J.R.T. v. A.C.A.A.*, 107 DPR 84, 90 (1978).[8] Reiteramos, la aplicación de esta doctrina no implica que la Junta renuncia a su

_____

[8] Cabe destacar que, en la jurisdicción federal, existe una doctrina análoga respecto a los procesos ante el *NLRB*. Véase William J. Isaacson, William C. Zifchak, *Agency Deferral to Private Arbitration of Employment Disputes*, 73 Colum. L. Rev. 1383 (1973).

jurisdicción exclusiva. Tal controversia ha sido examinada por la propia Junta y ha reiterado este razonamiento. Véase, por ejemplo, *Puerto Rico Telephone Company -y- Juan A. Albino Serrano*, Dec. Sec. Trabajo Núm. 2006-1408 del 3 de abril de 2006; *Unión de Tronquistas, Local 901 -e- Internacional Hotel Corp.*, Dec. Sec. Trabajo Núm. 1962-263 del 16 de marzo de 1962; *Puerto Rico Stampling Co., Inc. -y- Unión de Trabajadores de la Industrias de la Estufa*, Dec. Sec. Trabajo Núm. 1960-219 del 16 de mayo de 1960, en las págs. 1077-1078.[9]

En la etapa post-arbitraje, la situación es un tanto similar. Ello, pues, independientemente de que exista una determinación que haya dispuesto de una controversia sobre una práctica ilícita del trabajo, la Junta de Relaciones del Trabajo no pierde jurisdicción para atender el asunto. Tan reciente como en el año 2015, la Junta atendió esta interrogante y resolvió de conformidad con lo aquí dispuesto. Véase, por ejemplo, *Autoridad de Puertos -y- Juan I. Lacén Cirino*, Dec. Sec. Trabajo Núm. 2015-1472 del 24 de marzo de 2015, en las págs. 18-19; *A.A.A. -y- Hermandad Independiente de Empleados Profesionales de la A.A.A.*, Dec. Sec. Trabajo Núm. 2005-1399 del 24 de junio de 2005. Por otro lado, puntualizamos que a igual conclusión ha llegado

---

[9] La Corte Suprema de Estados Unidos, interpretando el NLRA, ha dispuesto lo mismo. Véase *N.L.R.B. v. Plasterers' Local Union No. 79, Operative Plasterers' & Cement Masons' Int'l Ass'n, AFL-CIO*, 404 U.S. 116, 136 (1971); *N.L.R.B. v. Strong*, 393 US 357, 360 (1969); *N.L.R.B. v. ACME Industrial Co.*, 385 US 432, 437 (1967).

el *National Labor Relations Board* (*NLRB)* en la jurisdicción federal. Véase *Spielberg Mfg. Co.,* 112 NLRB No. 1080, 1090 (1955) ("It is quite clear that as a matter of law the Board is not bound by the arbitration award and the implied agreement of the discriminatees to comply therewith."). Véase, además, Jonathan Reiner, *Preserving Workers' Statutory Rights: An Analysis of the NLRB General Counsel's Proposed Post-Arbitration Deferral Policy*, 28 ABA J. L. & EMP. L. 145, 146 (2012). Por consiguiente, en esta etapa la Junta tiene la facultad de determinar qué deferencia, si alguna, le confiere a ese dictamen.[10]

---

[10] Nos parece adecuado reseñar que el *NLRB*, con tal de crear un balance entre la importancia de la negociación colectiva y de evitar las prácticas ilícitas del trabajo, resolvió en el año 1955 *Spielberg Mfg. Co., supra,* caso en el que se adoptó por primera vez un estándar de deferencia a las determinaciones de un proceso para la disposición de quejas y agravios contenido en un convenio colectivo. No obstante, esta doctrina fue alterada posteriormente por varios dictámenes incluyendo, principalmente, *Olin Corp.,* 268 NLRB 573 (1984). Ahora bien, el estándar establecido por estos casos fue criticado fuertemente y para el año 2011 el Principal Asesor Legal del *NLRB* presentó una propuesta para adoptar un nuevo estándar de deferencia a seguir. Eventualmente, en *Babcok & Wilcox Construction Co.,* la *NLRB* acogió el estándar propuesto. Véase Michael Lotito, Missy Parry, Meredith McDonald, *Recent Developments in Employment Law and Litigation*, 52 Tort Trial & Ins. Prac. L.J. 341, 363 (2017).

Por último destacamos, a manera de ejemplo, que el estándar de deferencia adoptado en *Babcok & Wilson* requiere que el *NLRB* sopese los siguientes factores: (1) el proceso de arbitraje sea regular, justo y las partes hayan accedido al mismo; (2) la parte que solicita la deferencia al dictamen tiene que probar que el árbitro estaba explícitamente autorizado a decidir la controversia de práctica ilícita; (3) el árbitro tuvo ante sí y consideró la controversia estatutaria o no pudo así hacerlo por razones atribuibles a la parte que se opone a que se le conceda deferencia a la determinación, y (4) la determinación está en razonable

**ii**

Por otro lado, en este caso, es en extremo relevante repasar la doctrina de agotamiento de remedios administrativos. Esta modalidad de la doctrina requiere que aquella parte que desee obtener un remedio en una agencia, utilice todas las vías administrativas disponibles antes de recurrir ante el foro revisor o judicial. Véase *S.L.G. Flores Jiménez v. Colberg*, 173 DPR 843 (2008); *Guzmán y otros v. E.L.A.*, 156 DPR 693 (2002). Por lo tanto, "[e]l propósito de la doctrina es determinar la etapa en la cual el litigante puede recurrir a los tribunales, evitando así una intervención judicial innecesaria y a destiempo que interfiera con el cauce y desenlace normal del proceso administrativo". *Procuradora Paciente v. M.C.S.*, 163 DPR 21, 35 (2004). Ahora bien, previo a aplicar esta doctrina, es necesario precisar si la determinación a ser revisada es -en efecto- revisable.

En términos generales, el Artículo 4.006 de la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003*, Ley Núm. 22 de agosto de 2003, según enmendada, dispone que el Tribunal de Apelaciones tiene competencia para revisar, mediante un recurso de revisión judicial, "las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas". 4 LPRA sec. 24u. Por otro lado, cónsono con este principio, en *A.R.P.E. v. Coordinadora*, 165

---

concordancia con el *NLRA*. Véase *Babcok & Wilcox Construction Co., Inc.*, 361 NLRB No. 132 (2014).

DPR 850, 867 (2005), y luego en *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 543 (2006), este Tribunal dispuso que la *Ley Núm. 130* limita la revisión judicial de las decisiones que emite la Junta de Relaciones del Trabajo a decisiones finales sobre prácticas ilícitas del trabajo.

Nótese, además, que la *Ley de la judicatura* dispone que el procedimiento de revisión judicial se llevará a cabo conforme a las disposiciones de la *Ley de procedimiento administrativo uniforme*, Ley Núm. 12 de agosto de 1988, según enmendada (*LPAU*). Esta última, establece que el proceso de revisión judicial es aplicable a "aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos que serán revisadas por el Tribunal de Apelaciones mediante recurso de revisión". 3 LPRA sec. 2171. En consideración a lo anterior, hemos colegido que los dos (2) requisitos a cumplirse para que el Tribunal de Apelaciones pueda atender un recurso de revisión judicial son que: "(i) la parte adversamente afectada por la orden o resolución haya agotado los remedios provistos por la agencia y (ii) que la orden o resolución sea final, y no interlocutoria". *A.R.P.E. v. Coordinadora*, 165 DPR 850, 867 (2005).

Aunque la *LPAU* no provee una definición puntual para lo que constituye 'orden, resolución o providencias adjudicativas finales' -contrario a lo que ocurre con otros términos-, sí se provee una descripción de lo que debe

contener este tipo de dictamen.[11] A saber, incluir y exponer de forma separada "determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso. La orden o resolución deberá ser firmada por el jefe de la agencia o por cualquier otro funcionario autorizado por ley". 3 LPRA sec. 2164. Asimismo, se dispone que se tiene que advertir sobre el derecho a solicitar la reconsideración -y el término para así hacerlo- ante la agencia o para instar el recurso de revisión judicial correspondiente, así como las partes a ser notificadas del recurso de revisión. *Id.* Por último, cabe destacar que este Tribunal ha particularizado que el dictamen final es aquel "que pone fin a todas las controversias dilucidadas ante la agencia y cuyo efecto es sustancial sobre las partes". *A.R.P.E. v. Coordinadora*, 165 DPR en la pág. 867.

Ahora bien, este Tribunal reconoció que la doctrina de agotamiento de remedios administrativos no es de aplicación inflexible, por lo que tiene excepciones. Véase, por

---

[11] Conforme a la *LPAU* una orden o resolución "[s]ignifica cualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una (1) o más personas específicas, o que imponga penalidades o sanciones administrativas excluyendo órdenes ejecutivas emitidas por el Gobernador". 3 LPRA sec. 2102 (f). Por otro lado, una orden o resolución parcial "[s]ignifica la acción agencial que adjudique un procedimiento adjudicativo que disponga de algún asunto meramente procesal". 3 LPRA 2102 (g). Finalmente, una orden interlocutoria "[s]ignifica aquella acción de la agencia en un procedimiento adjudicativo que disponga de algún asunto meramente procesal". 3 LPRA sec. 2102 (h).

ejemplo, *Viuda De Iturregui v. E.L.A.*, 99 DPR 448 (1970).

Incluso, la propia *LPAU* contiene en la Sección 4.3 una

disposición a esos efectos; ésta reza como sigue:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. 3 LPRA sec. 2173.

No obstante, en consideración a las alegaciones

realizadas en este caso, nos corresponde enfocarnos en sólo

una (1) de las circunstancias excepcionales; a saber, si es

posible revisar una orden interlocutoria en instancias donde

un foro administrativo la emitió sin jurisdicción.

En *J. Exam. Tec. Med. v. Elías, et al.*, determinamos

que no era necesario que una parte agotara el trámite

administrativo "cuando la agencia claramente no tiene

jurisdicción y la posposición conlleva un daño irreparable

al afectado". *J. Exam. Tec. Med. v. Elías, et al.*, 144 DPR

483, 491 (1997). Ello, pues, según comentamos anteriormente,

la actuación de una agencia que no tiene jurisdicción es

*ultra vires*.[12]

---

[12] La aplicación de esta excepción fue igualmente reconocida en el contexto de un litigio presentado al amparo de la *Ley sumaria de reclamaciones laborales*, Ley Núm. 2 de 17 de

Así pues, de nuestra determinación quedó de manifiesto que para que se active la excepción tiene que surgir "claramente que la agencia no tiene jurisdicción". *Id.* Ello fue reiterado posteriormente en *Procuradora Paciente*, 163 DPR en la pág. 21. Asimismo, en *Comisionado Seguros v. Universal*, 167 DPR 21 (2006), donde aprovechamos la oportunidad para puntualizar que "[s]ólo en aquellos casos en los que la agencia administrativa carece realmente de jurisdicción, el proceso administrativo se convierte en final por no quedar asuntos o controversias pendientes de dilucidar por la agencia; sólo entonces sería revisable por el Tribunal de Apelaciones". *Comisionado Seguros v. Universal*, 167 DPR 21, 31 (2006).

## IV

Desde el mes de octubre de 2015 la AAA efectuó una 'reubicación' de varios empleados que se desempeñaban en diferentes centros de servicio al cliente de la agencia. Luego de que la UIA objetara las 'reubicaciones' ante la AAA, sin que ésta última dejara sin efecto las mismas, el 17 de noviembre de 2015 solicitó al Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos la designación de un árbitro. Mediante esta solicitud, la UIA planteó que la AAA realizó los traslados arbitrariamente, en contravención al *Convenio Colectivo*.

---

octubre de 1961. Véase *Dávila Rivera v. Antilles Shipping, Inc.*, 147 DPR 483 (1999).

Tras la designación de un árbitro, se calendarizó una vista para el 3 de diciembre de 2015.

Ahora bien, el 30 de noviembre de 2015, la UIA presentó un cargo ante la Junta de Relaciones del Trabajo. En ésta planteó que la AAA realizó 'reubicaciones' no contempladas en el *Convenio Colectivo* y que tampoco fueron negociadas con la UIA. Además, razonó que estas 'reubicaciones' eran una práctica ilícita del trabajo, pues constituían una intervención en la composición y, por ende, la administración de la unión.

Posteriormente, el 3 de diciembre de 2015 -durante la vista de arbitraje-, la UIA solicitó el archivo y cierre con perjuicio de la controversia. Tal petición fue aceptada por la AAA y acogida por el árbitro designado. A esos efectos, el 4 de diciembre de 2015, el árbitro emitió una *Resolución* en la que se ordenó el cierre y archivo con perjuicio del caso. Tras la continuación de los procedimientos ante la Junta, la AAA planteó que la Junta no tenía jurisdicción para disponer del cargo, pues la controversia se había llevado ante el proceso de arbitraje, conforme lo dispone el convenio colectivo, y se había archivado con perjuicio. No obstante, la Junta, mediante una orden, entre otras cosas, resolvió que tenía jurisdicción para atender el cargo presentado por la Unión.

Consideramos que el punto medular de la controversia entre las partes es si las 'reubicaciones' se hicieron en contravención al *Convenio Colectivo*. Según discutimos, la

*Ley Núm. 130* dispone que constituirá una práctica ilícita del trabajo la violación de los términos de un convenio colectivo. 29 LPRA sec. 69 (1) (f). Por lo tanto, al margen de los demás planteamientos que realizó la UIA ante la Junta de Relaciones del Trabajo, la esencia de esta controversia es si se efectuó una práctica ilícita del trabajo, asunto que está bajo la jurisdicción exclusiva de la Junta.

Ahora bien, conforme al Derecho aplicable, a pesar de que la Junta ostenta la jurisdicción exclusiva para atender la controversia en cuestión, las disposiciones de la propia *Ley Núm. 130* y las consideraciones de política pública sobre la negociación colectiva y el arbitraje permiten que las partes la resuelvan mediante aquellos procesos pactados en un convenio colectivo. A esos efectos, en este caso, el *Convenio Colectivo* establece ciertos mecanismos generales para resolver las reclamaciones de los empleados relacionadas con "la administración, interpretación o aplicación del [*Convenio*]" y los procesos particulares para atender reclamaciones sobre los 'traslados'. Véase *Apéndice XXV*, en la pág. 187; *Apéndice XXII*, en la pág. 157.

Según comentamos, en aquellos casos donde un convenio colectivo disponga cómo atender y resolver los problemas de las partes, éstas tienen que adherirse al mismo.[13] Recuérdese

---

[13] Cabe destacar que ambas partes hicieron referencias a distintos procesos de arbitraje conforme a las disposiciones del *Convenio Colectivo*. A saber, la UIA solicitó el arbitraje conforme al Artículo XXIV del *Convenio Colectivo* pues planteó que el movimiento de empleados constituyó un 'traslado' según lo dispuesto en ese artículo. Por otro lado, la AAA hizo referencia en su argumentación a la Sección IX

que "[u]na cláusula de arbitraje en un convenio no tendría sentido si su implantación dependiera de la voluntariedad de cada parte para presentar su caso, pues la parte que no desea un cambio en las relaciones podría anular el arbitraje sencillamente rehusando a comparecer a la vista". *J.R.T. v. Hato Rey Psychiatric. Hosp.*, 119 DPR 62, 70 (1987). Ciertamente, la UIA y la AAA actuaron de conformidad con los principios antes esbozados al activar los procesos pactados en el *Convenio Colectivo* para disponer de la controversia.

Además, la AAA arguyó que -en virtud de la doctrina de cosa juzgada- la Junta carecía de jurisdicción para atender el cargo presentado por la UIA, pues en la *Resolución* emitida por el árbitro se cerró y archivó la querella con perjuicio.

Sobre este particular, recuérdese que la doctrina de cosa juzgada implica que "la sentencia emitida en un pleito anterior impide que se litiguen posteriormente, entre las mismas partes y sobre las mismas causas de acción y cosas, las controversias ya litigadas y adjudicadas, y aquellas que se pudieron haber litigado". *Mun. De San Juan v. Bosque Real S.E.*, 158 DPR 743, 769 (2003). A pesar de que la mencionada doctrina es de aplicación al ámbito del Derecho administrativo, ésta no procede de forma automática o

---

(A) que dispone el proceso general para atender y resolver querellas, el cual en su Inciso (C) permite a cualquiera de las partes la solicitud de intervención del Negociado de Conciliación y Arbitraje. Véase *Apéndice XXV*, en la pág. 189. No obstante, independientemente de la disposición utilizada para activar el proceso de arbitraje, una vez comenzado éste, tenía que seguirse.

absoluta. Véase *Mun. de San Juan v. Bosque Real S.E.,* 158 DPR en la pág. 770.

Incluso, corresponde su rechazo cuando salvaguarde el resultado más justo y conveniente, acorde al interés público. Véase *Rodríguez Oyola v. Machado Díaz,* 136 DPR 250, 254 (1994).

No obstante, y más importante aún, el Artículo 7 (a) de la Ley Núm. 130 establece que la Junta no pierde su jurisdicción exclusiva para disponer de asuntos referentes a prácticas ilícitas del trabajo, independientemente de que existan otros procedimientos en los que se puedan atender las controversias planteadas ante esta entidad. Por lo tanto, la referida doctrina es inaplicable al presente caso toda vez que la reclamación presentada ante el árbitro se fundamentó en una disposición del convenio colectivo mientras que la acción instada ante la Junta fue al amparo de una presunta violación a la Ley Núm. 130. Proceder en contrario implicaría afectar la jurisdicción exclusiva que la Asamblea Legislativa le confirió a la Junta y, así, atentar contra los principios que orientan el deber de esta entidad para prevenir las prácticas ilícitas del trabajo en nuestro País.

Conforme a lo anterior, concluimos que la Junta de Relaciones del Trabajo tenía jurisdicción para atender la controversia planteada por la UIA. Ello, independientemente del resultado del proceso de arbitraje que las partes cursaron. Ahora bien, ya que los procesos ante la Junta se

encuentran en la etapa post-arbitraje, le compete a esta entidad, al igual que el *NLRB*, establecer aquellos estándares de deferencia –si alguno- que estime pertinentes con relación a la determinación del árbitro.

Al así concluir, procede determinar que el Tribunal de Apelaciones obró correctamente al desestimar el recurso de revisión judicial presentado por la AAA. Esto, pues, no aplica la excepción a la doctrina de agotamiento de remedios administrativos conforme a lo resuelto en *J. Exam. Tec. Med. v. Elías, et al.; Procuradora Paciente v. M.C.S.; Comisionado Seguros v. Universal*, ya que la Junta de Relaciones del Trabajo actuó con jurisdicción, y emitió una orden interlocutoria en propiedad. El error señalado no fue cometido.

Por último, aprovechamos para señalar que, en su *Resolución*, el foro apelativo intermedio no realizó un análisis de la jurisdicción de la Junta de Relaciones del Trabajo. Alertamos que, al plantearse la referida excepción a la doctrina de agotamiento de remedios administrativos, es preciso que el foro revisor analice la jurisdicción del foro administrativo para así poder disponer correctamente del planteamiento. En futuras ocasiones, el Tribunal de Apelaciones deberá así hacerlo.

Por todo lo anterior, confirmamos la *Resolución* emitida por el Tribunal de Apelaciones y devolvemos el caso a la Junta de Relaciones del Trabajo para la continuación de los procedimientos.

Se dictará sentencia de conformidad.


                        Anabelle Rodríguez Rodríguez
                              Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Autoridad de Acueductos y
Alcantarillados

    Peticionaria

       v.                    **Núm.** CC-2016-0797

Unión Independiente Auténtica
de Empleados de la Autoridad
de Acueductos y Alcantarillados

    Recurrida


SENTENCIA

En San Juan, Puerto Rico, a 6 de febrero de 2018.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, confirmamos la *Resolución* emitida por el Tribunal de Apelaciones y devolvemos el caso a la Junta de Relaciones del Trabajo para la continuación de los procedimientos.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez, la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García concurren sin opinión escrita. El Juez Asociado señor Estrella Martínez no intervino.


Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo